UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATANAEL TEWELDE WELDEGEBRIEL, AKA, DANIEL GHEBREMIKAEL (A-241-307-200),

Petitioner,

v.

WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER, et al,

Respondents.

No. 1:26-cv-04967 TLN CSK

FINDINGS & RECOMMENDATIONS

Petitioner Natanael Tewelde Weldegebriel, aka, Daniel Ghebremikael (A-241-307-200), a native and citizen of Eritrea, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner entered the United States on or about May 4, 2023, was detained, and released on May 7, 2023 on an Order of Recognizance. On September 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") officials re-detained petitioner. On March 2, 2026, an immigration judge ordered petitioner removed to Germany with Eritrea in the alternative. This habeas corpus petition concerns petitioner's re-detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted and petitioner

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

be immediately released.

## I. FACTUAL BACKGROUND

Petitioner is a native and citizen of Eritrea. (ECF No. 7-1 at 10.) On or about May 4, 2023, petitioner entered the United States at a border crossing and was detained by the United States Border Patrol. (Id. at 11.) At the time of this encounter, petitioner provided the name "Natanael Tewelde Weldegebriel." (Id. at 10.) On May 7, 2023, petitioner was released from the custody of the Department of Homeland Security ("DSH") by "Order of Recognizance" pending his immigration hearing. (Id. at 13.) On November 15, 2023, a Notice to Appear was issued which placed petitioner in Immigration and Nationality Act ("INA") Section 240, 8 U.S.C. § 1229a, removal proceedings, which are standard removal proceedings. (Id. at 5.) The Notice to Appear charged petitioner as removable under INA Section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. (Id.) The Notice to Appear identified petitioner as "Natanael Tewelde Weldegebriel." (Id.)

Petitioner initially proceeded under the name "Natanael Tewelde Weldegebriel" in Immigration Court, filing an Eritrean birth certificate with the name "Natanael Tewelde," date of birth April 15, 1996, and a secondary school student report card with the name "Natanael Tewelde Weldegebriel." (Id. at 2, 14, 15.) On February 10, 2025, petitioner, through counsel, filed a motion in immigration court to amend his name. (Id. at 2, 16-19.) In this motion, petitioner admitted that he provided a false name and that his correct name is Daniel Ghebremikael. (Id. at 17.) Petitioner has since filed an Eritrean birth certificate with the name "Daniel" and date of birth of April 15, 1998 (id. at 22), a German residence permit with the name "Daniel Ghebremikael" and date of birth April 15, 1998 (id. at 24-25), and a German travel document with the name "Daniel Ghebremikael" and a date of birth April 15, 1998 (id. at 26).

On September 8, 2025, ICE officials re-detained petitioner when he reported to an ICE office for a scheduled appointment. (Id. at 28.) On March 2, 2026, at an immigration court hearing, petitioner withdrew his applications for relief. (Id. at 32-35.) Additionally, the

immigration judge denied petitioner's request for voluntary departure and ordered petitioner removed to Germany with Eritrea in the alternative. (Id.) Petitioner reserved appeal but did not perfect an appeal with the Board of Immigration Appeals by the April 1, 2026 deadline. (Id. at 3, 35.) Therefore, petitioner's order for removal became final on April 1, 2026. (Id. at 3.)

## II. PROCEDURAL BACKGROUND

On June 29, 2026, petitioner filed his verified petition for writ of habeas corpus. (ECF No. 1.) On July 17, 2026, respondents timely filed an opposition to the petition. (ECF No. 7.) Petitioner did not file a reply. (See Docket.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes the petition challenging petitioner's detention and seeking release to raise a statutory claim under the INA and a due process claim under the Fifth Amendment. In the opposition to the petition, respondents argue that petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6) as he is subject to a final order of removal. (ECF No. 7 at 1.) Respondents argue that petitioner is just outside the 90-day removal period, but still within the initial six month period before the Court would commence analysis under Zadvydas v. Davis, 533 U.S. 678 (2001). (Id.) Respondents also argue that any delay in obtaining travel documents was caused by

petitioner using two different names. (Id.) Respondents argue that in spite of the short delay caused by the two names used by petitioner, respondents expect issuance of the travel documents soon. (Id. at 1-2.) Respondents request to file a status report update within 60 days advising of any progress toward petitioner's removal. (Id. at 2.) Respondents also request that the Court immediately lift the no-transfer prohibition ordered by the district court, as that no transfer order has the potential to delay issuance of a travel document and to prolong petitioner's detention. (Id.)

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following: (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions. 8 U.S.C. § 1231(a)(3). "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Johnson v. Arteaga-Martinez, 596 U.S. 573, 578–79 (2022) (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas, the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008) (citing Zadvydas, 533 U.S. at 684-86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6)

does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Here, the immigration judge ordered petitioner removed on March 2, 2026. (ECF No. 7-1 at 32-35.) The immigration judge's decision reflects that petitioner reserved appeal, and the appeal period expired on April 1, 2026. (Id. at 35.) Petitioner did not file an appeal. (Id. at 3.) Thus, the 90-day mandatory § 1231(a)(2) removal period began on April 1, 2026 and ended on June 30, 2026. Therefore, the 90-day removal period has expired. While respondents argue that petitioner is detained pursuant to § 1231(a)(6) and that petitioner is still within the six month period deemed reasonable under Zadvydas, respondents fail to address which of the four categories contained in § 1231(a)(6) petitioner falls within that justifies his continued detention. Respondents do not argue that petitioner is a risk to the community or unlikely to comply with the order of removal. (See ECF No. 7.) Petitioner has no criminal history. (ECF No. 7-1 at 28.) For these reasons, this Court finds that respondents have not demonstrated that petitioner's continued detention under § 1231(a)(6) is justified. The Court recommends that the petition be granted on this ground.

In addition, the fact that a noncitizen has been in custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas. "Zadvydas did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, *since* interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to

authorize detention only for a period consistent with the purpose of effectuating removal." Clark v. Martinez, 543 U.S. 371, 384 (2005) (citing Zadvydas, 533 U.S. at 697-99) (emphasis in original); see also Uzzhina v. Chestnut, 2025 WL 3458787, *3 n. 3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas."); Trinh v. Homan, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (explaining that, "[a]t no point did the Zadvydas Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period…it held that detention for less than six months was *presumptively* reasonable but left the lower courts to determine whether detention has 'exceed[ed] a period reasonably necessary to secure removal' in individual cases.") (emphasis in original); Cruz Medina v. Noem, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (noting that "what Zadvydas did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed"); Vijdani v. Mattos, 2026 WL 560209, at *3-4 (D. Nev. Feb. 27, 2026) (collecting cases concluding the same).

In this case, petitioner has been detained for almost one year. Petitioner's failure to identify his correct name could not have impacted the government's ability to remove petitioner following his September 2025 detention as petitioner informed the government of his correct name in February 2025 when he filed a motion in immigration court to amend his name. (ECF No. 7-1 at 2, 16-19.) In a declaration filed in support of the opposition, Deportation Officer Manglona describes the efforts to facilitate petitioner's removal to Germany since petitioner's order of removal became final. (ECF No. 7-1 at 3-4.) Deportation Officer Manglona states that,

> Since petitioner's removal order became administratively final, ERO has worked diligently to facilitate removal of petitioner to Germany. On April 21, 2026, petitioner was interviewed by ERO in preparation of completing a travel document request for Germany. On May 16, 2026, ERO completed a travel document request packet for Germany. On June 5, 2026, ERO contacted the German Embassy concerning the travel document request. On June 8, 2026, the German Embassy notified ERO that it has forwarded ERO's request to the German Consulate in Los Angeles. On June 11, 2026, the German Consulate in Los Angeles indicated that the German Consulate in New York has already initiated the process of returning petitioner to Germany. The German Consulate in New York is currently awaiting a response from their internal authorities

> concerning approval. The German Consulate has indicated that once it receives internal approval, it will take the necessary steps to issue the travel documents according to flight details and is hopeful to reach a resolution very soon. Upon issuance of a German travel document, ERO intends to schedule petitioner for a flight to Germany to effectuate removal provided there is no outstanding prohibition on removal.

(Id.)

The German Consulate's "hope" to reach a resolution very soon does not demonstrate that issuance of travel documents for petitioner to Germany is reasonably foreseeable. This Court also observes that the record contains no evidence regarding the success rate for travel documents for similarly situated detainees. Because the record contains no evidence demonstrating that petitioner's removal is reasonably foreseeable, combined with the facts that petitioner has been in immigration detention for almost one year since September 8, 2025, has no criminal history and respondents do not contend that petitioner is a flight risk, this Court finds that petitioner's continued detention is not consistent with the purpose of effectuating removal. Accordingly, this Court recommends that the petition be granted on this ground as well.

**V. CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondents be ordered to IMMEDIATELY release petitioner Natanael Tewelde Weldegebriel, aka, Daniel Ghebremikael (A-241-307-200) under the same conditions he was previously released in May 2023 under an Order of Recognizance. Respondents be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.
3. Given petitioner's pro se status, respondents be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.
4. The Clerk of the Court be directed to enter judgment in petitioner's favor and close

this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 27, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Weld4967.157.imm.RELEASE/2